IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | |
|---|---|
| JOSHUA SPRINGER, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:18-CV-00968-BP ) |
| SEMPER BLUE PROFESSIONAL SERVICES, INC., | ) ) ) ) |
| Defendant. | ) |

## JOINT MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AND MEMORANDUM OF LAW IN SUPPORT

The Parties have reached an agreement to settle this case. The agreement would, subject to the Court's approval, resolve the claims on behalf of the Named Plaintiff and certain Opt-In Plaintiffs to this action. The Parties hereby submit their proposed settlement to the Court, consistent with the terms of the agreement, to seek the Court's preliminary approval of the agreement between them and to set up a process for notifying Opt-In Plaintiffs of their rights and for obtaining the Court's final approval of the settlement agreement.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Missouri, Kentucky, Virginia, and Oklahoma state wage-and-hour statutes. Plaintiff asserted that Defendant Semper Blue Professional Services ("SB Pro") unlawfully failed to pay regular and overtime compensation to Plaintiff and other non-exempt employees. *See* Plaintiff's Complaint (Doc. 1). At the time of filing, SB Pro had already entered into a settlement agreement with the United States Department of Labor ("USDOL") for unpaid overtime. (Docs. 11 & 21).

1

In an effort to avoid the costs and uncertainties of protracted litigation, the Parties were ordered into the Court's Mediation Assessment Program and agreed to an informal exchange of documents and information between the Parties enabling them to conduct due diligence regarding the claims and issues. (Doc. 2). The mediation was held on August 14, 2019 with Mediator John Phillips.

The proposed settlement constitutes a global resolution of the dispute in which settlement payments will be made to all Opt-In Plaintiffs who are entitled to unpaid overtime and did not already settled their claims pursuant to the settlement administered by the USDOL. The individual payments are proportionate to the Plaintiffs' unpaid overtime, plus liquidated damages, representing approximately 200% of the estimated value of their claims.

The Parties respectfully submit that the proposed settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel with the assistance of Mediator Phillips. If approved by the Court, the Settlement will make payments to the all of the remaining Opt-In Plaintiffs who are entitled to overtime pay under the FLSA.

The Parties request, in accordance with the Fair Labor Standards Act and Federal Rules of Civil Procedure, the Court's order:

1. Determining, preliminarily, that the settlement agreement entered into between the Parties represents a fair and reasonable settlement of the Parties' dispute, including with respect to the Opt-In Plaintiffs;

2. Providing the Opt-In Plaintiffs be notified of this settlement by written notice, in the form submitted herewith;

3. Setting deadlines for Class Counsel to cause the distribution of the approved notice, in the form attached as Exhibit A, to Opt-In plaintiffs;

4. Finding that the distribution of notices as provided herein and in the Settlement Agreement constitutes the best notice practical under the circumstances to the Opt-In Plaintiffs and that such notice comports with due process and is due and sufficient notice for all purposes to all persons entitled thereto;

5. Scheduling a hearing to determine the lawfulness, reasonableness, adequacy, and fairness of the settlement, and whether the settlement should be finally approved by this Court, and whether an order granting final judicial approval should be entered thereon;

6. Providing that any member of the settlement class or any other person or entity with standing to object and who does object to the approval of the settlement may appear at the aforesaid hearing and show cause why the settlement should not be approved as fair, reasonable, and adequate; and

7. Requiring that all objections to the settlement which are to be heard at the hearing on final approval of the settlement and any papers or briefs submitted in support of said objections, will be considered only if said objectors make all of their objections in writing and mail them to the Clerk of the District Court at an address specified by the Court with a postmark no later than as provided by the Court and that all objectors who wish to appear mail written notice of their intention to appear and copies of all papers, affidavits, or briefs in support of their objections to the same address on or before the deadlines specified by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Action

1. On December 7, 2018, Plaintiff Joshua Springer filed this action against Defendant Semper Blue Professional Services ("SB Pro") for damages and collective action certification under the Fair Labor Standards Act ("FLSA"), state wage-and-hour laws and a common law claim for unjust enrichment. (Doc. 1).

2. Before Springer filed this lawsuit, SB Pro had already entered into a settlement agreement with the United States Department of Labor ("USDOL") after an investigation by the USDOL concluded that SB Pro had mistakenly violated the FLSA's overtime provisions. Pursuant to this settlement agreement, SB Pro began paying back wages to current and/or former SB Pro employees who were owed unpaid overtime wages in exchange for a release from the employee shortly after this lawsuit was filed. (Doc. 11).

3. Springer filed a motion to stay the settlement administered by the USDOL, which was denied by this Court. (Docs. 4 & 23).

4. The Court conditionally certified Plaintiff's FLSA claim on March 18, 2019, holding that Plaintiff had shown that they were similarly situated and were victims of a single decision, policy or plan of SB Pro. (Doc. 26).

5. After the Court conditionally certified Plaintiff's FLSA claim, notice was sent to more than 700 current and/or former SB Pro employees.

6. At the close of the notice period, 45 current and/or former SB Pro employees opted-in to the lawsuit.

7. The Parties were also ordered into the Court's Early Mediation Assessment Program. (Doc. 2).

8. Before mediation, the Parties exchanged documents, pursuant to Rule 26, and completed a comprehensive review of SB Pro's employees' payroll records and timecards.

**B.  Negotiation of the Settlement**

9. Between February 2019 and August 2019, the Parties engaged in an informal yet comprehensive exchange of information regarding Plaintiff's claims and Defendant's defenses to such claims. This included the calculation of Plaintiff's and the existing Opt-In Plaintiffs' overtime damages.

10. On August 14, 2019, a mediation was conducted by mediator John Phillips in Kansas City, Missouri. At mediation, the Parties reached the proposed settlement in this matter after extensive good-faith bargaining, which resulted in the settlement agreement attached hereto as Exhibit B.

11. The case was competently and vigorously prosecuted and defended. The firm of Protzman Law Firm, LLC, represents the Named Plaintiff and Opt-In Plaintiffs. SB Pro is represented by Seigfreid Bingham, LLC. Each of these firms, and the individual attorneys responsible for this case, has extensive experience handling wage and hour actions brought under the FLSA.

12. The Parties entered into the settlement agreement in an effort to avoid further litigation of their dispute.

13. The Parties and their respective counsel believe that the settlement is fair, adequate and reasonable in light of the risks of litigation, the stage of the proceedings, the settlement agreement between SB Pro and the USDOL, the settlement of putative FLSA claims entered into between SB Pro and its employees pursuant to the aforesaid settlement agreement, and the

expense, likely duration and complexity of the action in light of the small number of viable FLSA claims still pending.

14. The settlement is the result of good faith and arms-length bargaining between the Named Plaintiff and Defendants and was not reached through collusion.

15. The Notice of Settlement, in the form attached as Exhibit A, adequately and clearly informs absent settlement class members of the terms of the settlement, their right to inspect documents on file at the Court, their right to object to the settlement, their right to opt out of and be excluded from the settlement, and the time and location of the hearing on final approval.

16. The settlement would apply only to those current and former employees of Defendant who previously submitted opt-in consent forms in this action. For purposes of this settlement only, SB Pro agrees that the proposed class is similarly situated to the Named Plaintiff. Based on the agreement of the Parties, and upon evidence previously submitted in connection with the Named Plaintiff's motion for conditional certification, the Named Plaintiff has satisfied his burden of showing he and the opt-in plaintiffs are "similarly situated," as that term is used in the FLSA, and entitled to certification. This Court should, therefore, certify the settlement class for purposes of this settlement.

17. The Parties further agree that the class consists of the Named Plaintiff and forty-five (45) Opt-In Plaintiffs. After review of the applicable payroll and timekeeping records, the Parties agree that thirty-nine (39) of the Opt-In Plaintiffs are not entitled to damages either because they either did not have unpaid overtime and/or they accepted the settlement administered by the USDOL.

**C.     Terms of the Settlement**

18. SB Pro will make a payment in the gross amount of $50,480 in full settlement of the case. The settlement proceeds will be distributed as follows:

    (1) $38,000 to Protzman Law Firm for attorneys' fees and expenses;
    (2) $9,480 to be distributed among the seven eligible class members;
    (3) $3,000 as compensation to Joshua Springer for his service as named Plaintiff.

19. The distributions for the Named Plaintiff and Opt-In Plaintiffs are based on actual personnel and payroll records. Each person's proposed distribution is based on the number of improperly calculated overtime hours for each eligible class member who had unpaid overtime and did not already accept a settlement administered by the United States Department of Labor. Some Opt-In Plaintiffs may also receive a pro rata share based on consideration of the following factors: (1) dates of active employment; (2) and total number of hours worked at SB Pro.

20. In the "context of suits brought directly by employees against their employer under Section 216(b) to recover back wages for FLSA violations," the parties may submit a proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Settlement in the context of litigation where there are bona fide disputes and where employees are represented by "an attorney who protect their rights under the statute" are to be approved by district courts "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

21. Courts have been willing to allow settlements in suits brought by employees under the FLSA because "initiation of the action by employees provides some assurance of an adversarial context." *Id.* "If a settlement in an employee FLSA suit does not reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we

allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

22. This Court will find, after scrutinizing the proposed settlement in light of the direction set forth above, that the settlement is fair and should be preliminarily approved, pending a full hearing, if required, and opportunity for objection. The outcome of litigation is uncertain. Proceeding through trial and appeal would involve substantial litigation risks, would be costly, and would substantially defer resolution. Further, approval of the settlement is proposed here by experienced and reputable class action counsel. In this case, the Parties have vigorously and competently prosecuted and defended the FLSA allegations. The Parties have conducted through discovery and have participated in mediation. The proposed settlement is fair and should be preliminarily approved.

## ARGUMENT AND LEGAL AUTHORITIES

Court approval of this settlement is necessary to effectuate a valid and enforceable release of Plaintiffs' FLSA claims. Where, as here, the litigation arises from a private enforcement action under the FLSA, judicial approval of settlement is required. The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id.* at 1354. If

the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Plaintiffs respectfully submit that this Court should conclude that the Parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

The requirement for judicial approval of a settlement in a private FLSA action stems from the policies within the FLSA that generally prohibit any contractual agreement between an employer and an employee whereby the employee would waive his or her minimum wage and/or overtime rights under the FLSA. *See, e.g., Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704-10, 65 S. Ct. 895, 89 L.Ed.2d 1296 (1945); *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 739-40, 101 S. Ct. 1437, 1444-45, 67 L. Ed. 2d 641 (1981); *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352-53 (11th Cir. 1982).

Unlike a Rule 23 class action, the FLSA requires class members to affirmatively opt into a collective action to be bound to the results of such litigation. The requirement of judicial approval of FLSA claims is due to the prohibition against waivers of FLSA rights, rather than resulting from due process concerns for absent class members as in the context of a Rule 23 class action. See, e.g., *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008); *McInnis v. Ecolab, Inc.*, Case No. No. 11–02196, 2012 W.L. 892187, *2 (D. Minn., Feb. 17, 2012). Due to the opt-in nature of FLSA claims, a proposed settlement of an FLSA collective action, unlike a proposed settlement of a Rule 23 class action, does not typically require a "fairness hearing." See, e.g., *Moore v. Ackerman Inv. Co.*, Case No. C 07–3058, 2009 W.L. 2848858, *2 (N.D. Iowa, Sept. 1, 2009). Because opt-in plaintiffs have given their consent to join in this action, and the rights of non-parties will not in any manner be compromised or jeopardized by the settlement process, it is

not necessary to require published notice of any hearing the Court may wish to schedule before deciding whether to approve the settlement agreement.

Because the individual rights of non-parties will not be affected if the Court approves the settlement agreement, it is not necessary for the Court to conduct a Rule 23-type fairness hearing. *Moore*, 2009 WL 2848858 at *2. At most, all that may be necessary is for the Court, if it deems this necessary and appropriate, to schedule a brief hearing to enable counsel for the parties to explain the settlement in greater detail and to answer any questions the Court may have concerning specific settlement provisions.

By approving this settlement, the Court will be providing each current and putative Opt-In Plaintiff with the choice either to participate in this settlement and thereby release commensurate wage and hour claims, or not to participate in the settlement and retain the right to bring or participate in a separate action as to such claims. Thus, the proposed settlement herein provides fidelity to the "opt in" rights of putative FLSA opt in plaintiffs. See, e.g., *Chemi v. Champion Mortgage*, Case No. No. 2:05–cv–l238, 2009 W.L. 1470429 (D.N.J., May 26, 2009). The proposed settlement herein is exactly the type of a "fair compromise of a bona fide wage and hour dispute" resulting from an adversarial process to merit judicial approval. *See, e.g., McInnis*, 2012 W.L. 892187 at *2.

### A. The Proposed Settlement Is the Product of Contested Litigation.

The proposed settlement is the product of contested litigation. In his Complaint, Plaintiff made factual allegations describing SB Pro's allegedly unlawful compensation and time-keeping practices. (Doc. 1). In its Answer, SB Pro admitted that it miscalculated overtime payments for some employees on a limited basis and that it had entered into a supervised settlement with the

USDOL, but denied Plaintiff's other material factual allegations and asserted an array of affirmative defenses. (Doc. 21).

The Parties conducted factual investigation regarding Plaintiff's allegations, with Defendant producing documents and data related thereto. In addition to their factual investigations, the Parties also conducted in-depth legal analysis of various issues implicated in this case. In particular, the Parties scrupulously analyzed SB Pro's employees' time clock records and payroll records. The Parties acknowledged other more specific respective risks related to various contested factual issues and the application of legal defenses, as detailed above.

The settlement of this lawsuit resulted only after: (i) extensive review of documents regarding SB Pro's compensation policies, employee time clock records, and employee payroll records; and (ii) good faith settlement negotiations between the Parties, including a formal mediation, as ordered by the Court, with an exceptionally experienced mediator.

Prior to settlement, the Parties had a full opportunity to analyze pertinent factual and legal issues and assess the strengths and weaknesses of their claims and defenses. Accordingly, the Court should readily conclude the settlement was the product of contested litigation.

> **B.     The Proposed Settlement Reflects A Fair and Reasonable Resolution of a Bona Fide Dispute Between the Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a bona fide dispute between the parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed settlement.

> **1.     A Bona Fide Dispute Exists Between the Parties.**

Plaintiff alleged SB Pro violated the FLSA because it failed to properly pay overtime compensation to hourly security and compliance officers for work that exceeded 40 hours per week and that SB Pro manually manipulated its hourly employees' time records. SB Pro admitted that it

improperly calculated its employees' overtime pay and that it had settled a similar claim with the USDOL prior to Plaintiff's lawsuit.

However, if any of Plaintiffs' other claims for uncompensated work were ultimately found to have merit, and the case was certified as a collective action, SB Pro would be faced with the prospect of a monetary verdict in favor of Plaintiffs, as well as an obligation to pay litigation fees and costs incurred by Plaintiffs. If SB Pro's arguments were ultimately proven correct, then Plaintiffs might receive no recovery of any kind. Accordingly, the Court should readily conclude a bona fide dispute between the Parties existed under the FLSA.

### 2. The Proposed Settlement Is Fair and Reasonable.

Ultimately, the Parties settled the case in a manner that will provide monetary relief to Plaintiff and those Opt-In Plaintiffs effected by SB Pro's failure to properly pay overtime who did not already settle their claims with SB Pro vis-à-vis the USDOL settlement.

This settlement was the product of arms'-length negotiations by experienced counsel and has the salutary effect of (i) providing relief to Plaintiff and Opt-In Plaintiffs they sought to represent, and (ii) eliminating inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. See *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing Courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); see also *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

Public policy favors settlements. This is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. See *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); see also *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

As reflected in the Settlement Agreement, the proposed settlement brings value to Plaintiffs. At trial, the potential recovery could have been less, or nothing at all. Consequently, this settlement brings Plaintiffs value now, as opposed to years from now, and provides certainty regarding the outcome of this matter. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. Under the circumstances, a significant factor weighing in favor of the Court's approval of the proposed settlement is that substantial benefits will be immediately received by Plaintiffs and made certain by the settlement. See *In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements, they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotations omitted).

After thorough investigations of the facts and law, the Parties have gained extensive knowledge of the strengths and weakness of their respective opponent's positions, providing the Parties with ample opportunity to assess the proposed settlement before they mutually agreed to it. Based on their knowledge of the case and the applicable law, as well as their experience in

similar FLSA actions, Plaintiffs' counsel believes the settlement is fair, reasonable and adequate. That opinion is entitled to great weight by the Court. Additionally, the Parties have executed a Settlement Agreement indicating their approval of the settlement. Accordingly, the Parties respectfully suggest this Court should conclude the settlement reflects a fair and reasonable resolution of a bona fide dispute under the FLSA and approve the settlement.

**C.     The Modest Incentive Payment to The Named Plaintiff Is Reasonable.**

Under the Settlement Agreement, the Named Plaintiff will receive a modest service award of $3,000.00 for being Class Representative in this action which resulted in the proposed relief to Plaintiff and the Opt-In Plaintiffs. The Named Plaintiff expended considerable time and effort and worked with Plaintiffs' Counsel throughout this Litigation in pursuing these claims on behalf of Class Members, including but not limited to: (i) discussing with Plaintiffs' Counsel various factual issues applicable to the complex legal landscape in the case; and (ii) assisting with document production; and (iii) participating in the settlement conference held with John Phillips.

The Named Plaintiff subjected himself to the personal tolls of being directly involved in the litigation in order to assert his perceived rights and the rights of his fellow Class Members. He took the initiative to file and pursue this matter on behalf of the Class.

Therefore, the amount sought for this incentive payment specifically set forth in the Settlement Agreement is fair and reasonable and should be approved by this Court.

**D.     Plaintiffs' Counsel Is Entitled to A Reasonable Award of Fees and Expenses.**

Under the FLSA, Plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages. See *29 U.S.C. § 216(b)*. As explained in Plaintiffs' Motion for Approval of Attorneys' Fees and Costs, the proposed settlement for $38,000.00 in attorneys' fees and costs is fair and reasonable. This figure includes all fees and out-of-pocket costs incurred by Plaintiffs'

Counsel in litigating this matter on behalf of Plaintiff and the class. Plaintiffs' counsel dedicated significant time investigating and litigating this case, which necessarily limited the number of other cases they could accept. Further, Plaintiffs' counsel will continue to expend substantial time implementing the Settlement and responding to Settlement Participants' inquiries regarding the distribution of the settlement payments.

During this litigation, Plaintiffs' Counsel thoroughly familiarized themselves with Defendant's wage and hour policies and the work performed by Plaintiffs and class members. Plaintiffs' Counsel engaged in substantial motion practice, discovery, interviews, and reviewed hundreds of pages of documents produced by Defendant. Finally, as mentioned above, Plaintiffs' Counsel participated in a full-day Settlement Conference with an experienced mediator to help resolve complex legal and procedural issues related to the terms and administration of the settlement. All of these tasks were performed at a high level, without compensation and with the ultimate risk of no compensation. Accordingly, the Parties request that the Court approve the payment of $38,000.00 in attorneys' fees and costs as part of the Parties' negotiated settlement. Contemporaneous herewith, Plaintiffs have filed their Motion for Approval of Attorneys' Fees and Costs.

## **CONCLUSION**

This Settlement Agreement was reached as a result of contested litigation and resolves a bona fide dispute between the Parties under the FLSA. The Parties engaged in lengthy investigation of the pertinent facts and law and conducted extensive negotiations, most notably during formal mediation, before finally reaching settlement. The settlement is fair and reasonable. It provides Plaintiff and the Opt-In Plaintiffs with relief in a hotly contested matter where substantial issues of law are uncertain as the impact thereof of liability and damages. For these

reasons, and those set forth above, the Parties respectfully suggest the Court approve the Settlement Agreement, including the award of attorney's fees to Plaintiffs' counsel.

        Respectfully Submitted,

        **PROTZMAN LAW FIRM, LLC**

        *By:* /s/ Ben Stelter-Embry
        Andrew B. Protzman   MO # 47086
        Ben Stelter-Embry    MO # 65404
        1100 Main Street, Suite 2430
        Kansas City, MO 64105
        Phone: (816) 421-5100
        Fax: (816) 421-5101
        Email: andy@protzmanlaw.com
               ben@protzmanlaw.com

        **ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

        **SEIGFREID BINGHAM, P.C.**

        *By:* /s/ Rachel H. Baker
        Rachel H. Baker    MO #42200
        Shannon D. Johnson   MO #60180
        2323 Grand Blvd., Suite 1000
        Kansas City, Missouri 64108
        Phone: (816) 421-4460
        Fax: (816) 474-3447
        Email: rbaker@sb-kc.com
               sjohnson@sb-kc.com

        **ATTORNEYS FOR DEFENDANT**